UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21915-CIV-GAYLES

MICHAEL MENNELLA,
an individual

          **Plaintiff,**

v.

AMERICAN AIRLINES, INC.,
a foreign corporation,

          **Defendant.**       /

## ORDER

**THIS CAUSE** comes before the Court on Defendant American Airlines's Motion for Summary Judgment ("Motion"). [ECF No. 49]. The Court has reviewed the Motion, arguments of counsel, the record, and the applicable law. For the reasons that follow, the Motion is **GRANTED**.

### FACTUAL BACKGROUND

This is an action for defamation and negligence against American Airlines based on events occurring while one of its planes was boarding and in the air. Plaintiff is a businessman. As part of his business, Plaintiff frequently travels for conferences and to expand his clientele. Plaintiff is a high-status member of American Airlines's frequent traveler program and is used to traveling on airplanes—most frequently in first-class. A bilateral amputee, Plaintiff uses a wheelchair approximately 80% of the time, including while traveling.

This incident stems from Plaintiff's August 2016 flight from Miami to Las Vegas. Plaintiff was scheduled to fly to Las Vegas for an annual conference that in prior years had brought him substantial business. Plaintiff prepared for the flight as he typically did: he called American

Airlines a few months in advance to let them know that he was disabled and required wheelchair assistance and a pre-boarding pass. But when he showed up at the airport, Defendant seemed unprepared to accommodate him.

Plaintiff was instructed to wait at the curb until a wheelchair could be found. Between 15 and 20 minutes later, an employee arrived with a wheelchair. The employee did not speak English, limiting communication. The employee wheeled Plaintiff to the ticketing counter, where Plaintiff again waited for assistance. While waiting, Plaintiff became nervous that he would miss his flight. Rather than risk that, Plaintiff elected to walk most of the way to the gate using his prosthetic legs, arriving as they were pre-boarding the flight. Plaintiff voiced his complaints to the gate attendant. He also explained what he needed once he got on the plane and how the flight attendants could accommodate his disability.

After boarding without assistance from the gate or flight attendants, Plaintiff sat down and removed his prosthetics. He told the first-class flight attendant that he was disabled. Plaintiff alleges that the flight attendant ignored him and refused to help him stow his prosthetics or his bag. Plaintiff also asked for ice and an alcoholic beverage. He alleges that other first-class passengers were served drinks, but he was not.

After takeoff, Plaintiff reiterated his request to the first-class flight attendant for something to drink, ice, or aspirin. Despite telling her that he was in pain, Plaintiff was not served. He asked her if it was illegal for him to get up while the seat belt sign was on. She replied that it was not. Although walking without his prosthetics is painful, Plaintiff stood and walked to the back of the plane to request a drink from the main-cabin flight attendants. There, he was informed that the first-class flight attendant had already called back with the instruction to refuse him service.

Plaintiff was unhappy that he was refused service and loudly complained as he made his way back to his seat. The flight attendants requested the assistance of an armed law enforcement officer ("LEO") onboard the flight. The LEO spoke with a passenger in first-class. The passenger acknowledged that Plaintiff was being loud, but said that it was due to Plaintiff's physical discomfort and pain. The LEO remained in the cockpit area for the duration of the flight. The LEO briefly spoke with Plaintiff and told him that he did not know why the flight attendants were refusing to serve him. During this time, the flight attendants also spoke with the Captain frequently and advised him of Plaintiff's actions. Plaintiff asked to speak with the Captain; the flight attendants denied his request.

At some point, the Captain decided to divert the aircraft and land in Dallas/Fort Worth instead of Las Vegas. The parties dispute the reason for the Captain's decision, and the record is not clear as to why he did so: either because of Plaintiff's medical issues or because Plaintiff was disruptive and intoxicated. Plaintiff alleges that he—along with the entire first-class cabin—heard the first-class flight attendant on the airplane phone, presumably talking to the Captain, stating that Plaintiff was "a drunk," "a drunk in first-class," "drunk and disorderly," and "extremely intoxicated." Once the plane landed in Dallas, two police officers boarded and removed him from the aircraft. Plaintiff also alleges that one of the officers told him he was being removed because he had committed "a felony because of his extreme intoxication, and that the severity of his crime merited a lengthy incarceration." Plaintiff claims the entire first-class cabin heard each statement.

Plaintiff was not intoxicated. A breathalyzer test indicated no alcohol in his system. And although Plaintiff claims he was in pain during the events and suffered injuries, the record does not establish that he suffered any bodily injury during these events.

Plaintiff brought three claims against Defendant: (1) defamation per se, (2) violation of Title III of the Americans with Disabilities Act, and (3) negligence. [ECF No. 16]. The Court previously dismissed Plaintiff's second claim [ECF No. 40], leaving only the defamation and negligence claims. Defendant now moves for summary judgment on both.

## DISCUSSION

### I. Legal Standard

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## II. Defamation Per Se

Plaintiff alleges that Defendant committed defamation per se[1] when its first-class flight attendant allegedly stated, or caused the first-class cabin to hear, that he was "a drunk," "a drunk in first-class," "drunk and disorderly," and "extremely intoxicated." Plaintiff claims that these statements are defamatory per se because they impute poor judgment and lack of professionalism that affect his credibility as a businessman, and that passengers on the plane, which included his business colleagues, heard those statements. Defendant argues that even if the statements were made, they do not meet the standard for defamation per se and that Plaintiff cannot identify a specific third party who heard them, as required by case law.

Slander per se, defamation based on a spoken statement, requires that: "(1) the defendant publish[] a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement cause[] injury to another." *Aflalo v. Weiner*, No. 17-61923-CIV, 2018 WL 3235529, at *1 (S.D. Fla. July 2, 2018) (citing *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)). The Court finds that the alleged statements are not defamatory per se and that Plaintiff has not established that they were published to a third party. Each is addressed in turn.

### A. Defamatory Statements

Plaintiff argues that the first-class flight attendant's statements describing him as "a drunk," "a drunk in first-class," "drunk and disorderly," and "extremely intoxicated," negatively affected public perception of his judgment, an essential character trait in his line of work. "*Per se* defamatory statements are 'so obviously defamatory' and 'damaging to [one's] reputation' that

---

[1] The Court evaluates Plaintiff's claim under the defamation per se standard. That was what Plaintiff pled in his Amended Complaint and he has not attempted to amend this count. The Court declines any implicit invitation to use a different defamation standard.

5

they 'give[] rise to an absolute presumption both of malice and damage.'" *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015) (italics in original) (citing *Wolfson v. Kirk,* 273 So. 2d 774, 776 (Fla. 4th DCA 1973)); *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (Defamatory per se statements are so "injurious" that the harm "is apparent from the words in the statement itself.").

"[L]anguage that interferes with one's profession" is one of the classic examples of defamation per se. *Scobie*, 2013 WL 3776270, at *2. The statement need not be true to cause injury. *See Klayman*, 22 F. Supp. 3d at 1248. ("[B]ecause it is the purportedly defamatory statement that must impute the criminal offense amounting to a felony, whether the underlying facts actually support a felony offense is not relevant"). Rather, it need only impute "conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business [or] profession . . . ." *Id.* at 1247; *Paulson v. Cosmetic Dermatology, Inc.*, No. 17-20094-CIV, 2017 WL 2484197, at *4 (S.D. Fla. June 8, 2017) ("[T]he conduct suggested of Paulson—that she violated an unnamed company policy—does not impute to her a characteristic inconsistent with her duties as Vice President of Marketing and Executive Creative Director") (collecting cases).

The Court finds that the first-class flight attendant's alleged statements imputing drunkenness and extreme intoxication to Plaintiff do not rise to the level of defamation per se in this context. Such statements made without reference to Plaintiff's employment do not "impute[] conduct to the plaintiff[] that was incompatible with the essential function[] of [his] job." *See Paulson*, 2017 WL 2484197, at *4. Plaintiff has affirmatively stated that he was on the way to a conference—not yet working—and the Court has identified no precedent where imputing poor judgment related to social drinking was actionable as defamation per se. Moreover, Defendant

6

disputes that such statements were ever made and Plaintiff has not presented evidence outside of his self-serving testimony.

### B. Publication to a Third Party

Even if the first-class flight attendant's statements were actionable as defamation per se, the Court finds that Plaintiff has failed to show publication of the statements to a third party. *Aflalo*, 2018 WL 3235529, at *1. Plaintiff argues that the statements were publicized to other passengers on the plane, including his unnamed business colleagues.[2] Defendant points out that Plaintiff cannot identify a single, specific passenger who heard the statements.

"[I]t is essential to a cause of action [for defamation] that the alleged slanderous or disparaging statement be made or published to some third person." *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995) (alterations in original; internal quotation marks omitted) (quoting *State Farm Fire & Cas. Co. v. Compupay, Inc.*, 654 So. 2d 944, 948 (Fla. 3d DCA 1995)). To meet the standard for publication to a third party, a plaintiff "must allege the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty' to afford the defendant 'enough information to determine affirmative defenses.'" *Aflalo*, 2018 WL 3235529, at *3–4 (citing *Ward v. Triple Canopy, Inc.*, No. 8:17-cv-802-T-24, 2017 WL 3149431, at *4 (M.D. Fla. July 25, 2017)).

---

[2] On September 11, 2018, Plaintiff filed a Motion for Leave to Take Deposition of Newly Disclosed Witnesses After Discovery Deadline. [ECF No. 67]. Plaintiff argued that names of the first-class cabin passengers had been withheld from him during discovery. Plaintiff's Motion was filed after Defendant's Motion for Summary Judgment had been fully briefed and pending for almost three months, and more than four months after the close of all discovery. Additionally, Plaintiff did not even request a copy of the passenger manifest until less than six weeks before discovery closed, nor did he take any measures during that time to ensure production of the passenger list, such as filing a motion to compel. The Court denied Plaintiff's Motion, finding that the passenger list could have been discovered or compelled during the course of discovery had Plaintiff done his diligence. [ECF No. 72].

Accordingly, a vague assertion that "people heard it" does not meet the standard for publication to a third party. *See Scobie*, 2013 WL 3776270, at *3 (collecting cases); *see also Catalyst Pharm., Inc. v. Fullerton*, No. 16-25365-CIV, 2017 WL 6558397, at *6–7 (S.D. Fla. Aug. 8, 2017), *reconsideration denied*, No. 16-25365-CIV, 2017 WL 6558398 (S.D. Fla. Nov. 7, 2017), *aff'd*, 748 F. App'x 944 (11th Cir. 2018) ("[S]imply stating 'others' accessed the information does not, standing alone, establish those 'others' were 'third parties' as required by Florida defamation law."); *Masvidal v. United States Dep't of Justice*, No. 09-61485-CIV, 2010 WL 11606119, at *8 (S.D. Fla. Mar. 29, 2010) (finding no third party publication where plaintiff made only conclusory allegations that defendant published a defamatory statement to "other persons and entities" without any identifying details).

Here, Plaintiff generally asserts that other passengers in first-class, which included people from the conference and other "business colleagues," heard the first-class flight attendant saying that he was "a drunk," "a drunk in first-class," "drunk and disorderly," and "extremely intoxicated." But Plaintiff has not identified a single specific individual who heard these statements. Vaguely asserting that "other passengers in first-class" heard the flight attendant say he was drunk does not meet the legal requirements for publication to a third party.

The Court therefore finds that Defendant's Motion must be granted as to Plaintiff's defamation per se claim.[3]

---

[3] Plaintiff also seemingly argues that Defendant defamed him per se when the police officer who boarded the place at Dallas/Fort Worth told him within earshot of the first-class cabin that he was being removed from the aircraft because he had committed "a felony because of his extreme intoxication, and that the severity of his crime merited a lengthy incarceration." Those police officers did not work or speak for American Airlines, so Plaintiff cannot impute their statements onto Defendant for liability purposes.

But even if the officer's comment could be imputed to Defendant, Plaintiff cannot establish that it was publicized to a third party. As discussed *supra*, a vague assertion that "people heard it" does not meet the standard for publication to a third party. *See Scobie*, 2013 WL 3776270, at *3

### III. Negligence

Plaintiff also brings a claim for negligence against Defendant. Defendant argues that Plaintiff's claim is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713 *et seq.* ("ADA").[4] Plaintiff responds that this Court's opinion in *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381 (S.D. Fla. 2014), forecloses preemption.[5]

#### A. ADA Preemption

"The Airline Deregulation Act [] was enacted in 1978 as an amendment to the Federal Aviation Act ("FAA") to encourage competition in the aviation industry through deregulation." *Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 F. App'x 657, 659–60 (11th Cir. 2015) (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992)). Congress included a preemption provision "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Id.*; *see also Barbakow v. USAIR, Inc.*, 950 F. Supp. 1145, 1146 (S.D. Fla. 1996). The provision states: "[s]tates may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or *service* of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (2012) (emphasis added). The ADA also preempts private actions. *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1254 (11th Cir. 2003)

---

(collecting cases); *see also Masvidal*, 2010 WL 11606119, at *8. Plaintiff cannot identify a single individual who heard the remark that he was being pulled off a plane for committing the felony of being drunk on an airplane.

[4] Plaintiff's defamation claim is not preempted. *See Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 F. App'x 657, 661 (11th Cir. 2015) (concluding that "Lu's slander claim involving Lu's removal and the security officer's related statements are not preempted").

[5] At the hearing, Plaintiff argued that *Adler* and other cases also stood for the proposition that the Air Carrier Access Act, 49 U.S.C. § 41705 *et seq.* ("ACAA") did not preempt his claim. But those cases are inapposite: Defendant's counsel does not suggest that ACAA preemption applies here. Nor could it. Only ADA preemption could apply.

"The Supreme Court has defined 'related to' under the ADA broadly, using the same standard for interpretation as [the Employee Retirement Income Security Act of 1974]." *Lu*, 631 F. App'x at 659–60 (citing *Morales,* 504 U.S. at 383–84). The Eleventh Circuit has also interpreted "service[s]" expansively, adopting the definition of the Fifth Circuit:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Branche*, 342 F.3d at 1256–57 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). Therefore, the Court must determine whether Plaintiff's negligence claim relates to an airline's services "in a way that implicates the ADA's deregulation of the economic and contractual features of air transportation." *Pipino v. Delta Air Lines, Inc.*, No. 15-cv-80330, 2015 WL 4450039, at *3 (S.D. Fla. July 20, 2015); *see also Branche*, 342 F.3d at 1258–59 ("In short, the phrase 'related to the . . . services of an air carrier' means having a connection with or reference to the elements of air travel that are bargained for by passengers with air carriers. This includes not only the physical transportation of passengers, but also the incidents of that transportation over which air carriers compete.").

### B. *Plaintiff's Negligence Claim*

In Count III, Plaintiff asserts a claim for common law negligence. Plaintiff alleges that Defendant was negligent because it failed to provide him with reasonable accommodations for his disability. Under Florida law, a plaintiff must demonstrate "a duty, breach of that duty, causation,

and damages" to succeed on a negligence claim. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (citing *Curd v. Mosaic Fertilizer, L.L.C.,* 39 So. 3d 1216, 1227 (Fla. 2010)).

Plaintiff alleges that Defendant owed him two duties of care: (1) to supervise and train its employees to recognize and accommodate a disabled passenger, and (2) to provide reasonable accommodations for his disability. According to Plaintiff, these duties of care included helping Plaintiff place his prosthetics in the overhead bin while boarding, providing him with a wheelchair in the airport, and providing him with ice and/or aspirin when requested. Plaintiff argues Defendant breached these duties by failing to supervise and train its employees to make those reasonable accommodations. Because of this, Plaintiff alleges that he suffered damages including "harm to his person and body for overcompensating for not having a wheelchair . . . and other major physical and mental harm." [ECF No. 16, ¶ 66]. Plaintiff asserts that his claimed injuries are not the types of claims that the ADA preempts.[6]

Under Eleventh Circuit precedent, boarding procedures are services. *Branche,* 342 F.3d at 1257 (including "boarding procedures" in its definition of services). Thus, courts here have repeatedly found that the ADA preempts different aspects of boarding procedures. *E.g.*, *Lu*, 631 F. App'x at 660 (finding rudeness and mistreatment during boarding preempted); *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 n.2 (11th Cir. 2005) (finding claim preempted by the ADA because the conduct at issue arose out of gate attendants asking Plaintiff to open her bag for safety purposes while boarding).

---

[6] Most of these claims are easily disposed of. This Court has previously determined that the ADA preempts claims relating to flight attendants' determination that a passenger is intoxicated and the provision of food and drink. *E.g.*, *Barbakow*, 950 F. Supp. at 1149. Thus, Plaintiff's breach and injury allegations relating to those issues fail. All that remains is Plaintiff's claim that the flight attendants should have helped him with his wheelchair and prosthetics and the injury he claims resulted.

11

But, not all claims relating to prices, routes, or services are preempted. The Eleventh Circuit has recognized that "'[s]ome state actions may affect [airline prices, routes or services] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Branche*, 342 F.3d at 1255 (quoting *Morales,* 504 U.S. at 390). Despite its broad interpretation of "services," the Eleventh Circuit has specifically excluded claims for negligence arising from personal injuries resulting from the operation or maintenance of the aircraft. *Id.* at 1258. The Court reasoned that excluding such claims respects Congress's stated goal of promoting competition in the airline industry. *Id.* By doing so, the Court enabled passengers to bring claims based on negligence that caused physical injuries, but not challenges to contractual features of service—features that airlines use to distinguish themselves in a buyer's-choice market.

At base, there are three issues presented here: First, does assisting with prosthetics and providing a wheelchair constitute a "service" under the ADA; second, did Plaintiff suffer an injury; and third, did Defendant cause his injury?

### 1. *Plaintiff's claims relate to airline services.*

The Court agrees that the specific claims asserted here—that Plaintiff should have been provided a wheelchair as requested and that the flight attendants should have assisted him with placing his prosthetics and baggage in the overhead bin—are preempted. These are "[b]aggage handling [and] passenger handling" claims that are "inherent when you board an airplane" and "relate to the heart of services that an airline provides." *E.g.*, *Koutsouradis*, 427 F.3d at 1344 n.2. Simply put, these are disability assistance boarding procedures that passengers contract for when purchasing a ticket. Thus, because the procedures Plaintiff complains of fall within the competitive marketplace that Congress intended to create with the ADA, Plaintiff's claims are preempted.

### *2. Plaintiff suffered no cognizable injury caused by Defendant.*

In cases before this Court, a defining factor of negligence and personal injury claims against an airline is that an employee's performance of his duties caused a plaintiff some specific physical, mental, or emotional injury. *Pipino*, 2015 WL 4450039, at *3 (allowing negligence claim where defendant denied plaintiff the right to board because she appeared to be intoxicated and subsequently refused to assist her when she suffered a panic attack); *Karlin v. Delta Airlines*, No. 12-80620, 2013 WL 12142361, at *2 (S.D. Fla. Feb. 12, 2013) (personal injury claim not preempted where bag fell on passenger's head). Here, Plaintiff's only injury is the general pain he experienced walking to and inside the plane.[7] Courts have not addressed the question of whether the ADA preempts claims of generalized "pain" during a flight as a result of boarding procedures. *Cf. Xiaoyun Lu v. AirTran Airways, Inc.*, No. 1:13-CV-1846-CC, 2015 WL 5936934, at *6 (N.D. Ga. Mar. 31, 2015), *aff'd sub nom. Xiaoyun Lucy Lu*, 631 F. App'x 657 ("Although Plaintiff does not allege a physical injury, Plaintiff alleges that she suffered emotional injury and that her injury is directly related to the faulty operation of a component of the aircraft. Such a claim, in this Court's view, relates to onboard safety."). Plaintiff has not provided, nor has the Court independently identified, any case law to support a finding that such general pain is an actionable injury.

Moreover, as with any negligence claim, Plaintiff must establish that Defendant's negligent performance of a duty in some way caused the specific injury he suffered. He fails to do so. According to Plaintiff, his pain originated from his walk to the gate. Plaintiff does not pinpoint an injury or pain that originated from anything the flight attendants did or did not do. The lack of

---

[7] Plaintiff's counsel conceded at argument that there is no evidence in the record to support his injury other than his client's testimony that he was in pain at that time.

causation removes this case from similar airline negligence cases where faulty operation or some other affirmative act by a flight crew caused an injury. *E.g.*, *Karlin*, 2013 WL 12142361, at *2.

While an injury claim resulting from a flight attendant's negligence in executing a boarding procedure could possibly survive preemption, *e.g.*, *Pipino*, 2015 WL 4450039, at *3, Plaintiff has not proven a cognizable injury caused by Defendant here. Accordingly, Plaintiff's negligence claim cannot survive summary judgment.

## CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED**. This action is **CLOSED** for administrative purposes and all pending motions are **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of March, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE